UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO.: 04-40256-FDS

ROBERT J. KILLION, JR
                    Plaintiff,

v.

COMMONWEALTH YACHTS and
MAINSHIP CORPORATION
                    Defendants.

## DEFENDANT MAINSHIP CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Mainship Corporation ("Mainship") submits this memorandum in support of its

Motion to Dismiss. This motion should be granted because (1) the plaintiff has not demonstrated

that the Massachusetts long-arm statute applies to Mainship; (2) the plaintiff has not demonstrated

that Mainship has the requisite minimum contacts for this court to exercise personal jurisdiction; (3)

this is an improper venue; and (4) this action should be dismissed under the doctrine of forum *non-*

*conveniens.*

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    FACTUAL BACKGROUND

In this case, the plaintiff has set forth jurisdictional facts which, viewed in the light most

favorable to him,[1] are as follows.

---

[1]    The defendants dispute many of the facts alleged, and deny any wrongdoing whatsoever.

Robert J. Killion, Jr. (hereinafter "Killion" or plaintiff), is an individual who resides in Princeton, Worcester County, Massachusetts. (Pl.'s Amended Compl. and Jury Demand (hereinafter "Amended Compl.") ¶1 attached hereto as Exhibit "D".) In 2000 and 2001, Robert J. Killion, Jr., researched Mainship boats, including the 2002 Mainship 390 Trawler. (Id. at ¶6.) Mainship is a corporation under the laws of the State of New Jersey, and does business in the State of Florida and the State of Georgia. (Hankins Aff. ¶2 attached hereto as Exhibit "E".) Mainship has no authorized dealerships in the Commonwealth of Massachusetts and is not registered to do business in Massachusetts. (See id.)

In October, 2001, Killion attended a boat show which took place in Annapolis, Maryland. (Amended Compl. ¶6.) At this Maryland boat show, Killion spoke with representatives of Mainship and a small dealer and broker of yachts, Commonwealth Yachts, Inc. (hereinafter "Commonwealth Yachts"). (Amended Compl. ¶¶7-8; Hankins Aff. ¶4.) Commonwealth Yachts is a Virginia Corporation with its place of business in Gloucester Point, Virginia. (See Amended Compl. ¶3; Hankins Aff. ¶4.)

Killion alleges that during the conversations at the Maryland boat show, Mainship and Commonwealth Yachts made certain representations regarding the construction of the boat, particularly that the boat was constructed of solid fiberglass below the waterline. (Amended Compl. ¶¶7-9.) Killion also allegedly asked at the Annapolis, Maryland, boat show about swim platform leakage problems which were allegedly present in earlier models of certain Mainship trawlers. (Id.) Killion claims to have been given a response that the boat was made of solid fiberglass below the waterline and that any swim platform problems had been resolved. (Id.)

Killion contends that he then returned to Massachusetts, after which he concluded the purchase of a 2002 Mainship 390 Trawler (hereinafter "the subject boat") from Commonwealth Yachts, on October 14, 2001. (Id. at ¶¶5,10.) Killion took possession of the subject boat at Commonwealth Yachts's Gloucester Point, Virginia, location. (Id. at ¶11; see also Hankins Aff. ¶5.)


Killion alleges that after he took possession of the subject boat in Virginia, he began to notice problems with its performance. (Amended Compl. ¶11; Hankins Aff. ¶6.) He contends that these performance issues were related to the swim platform on the subject boat filling with sea water. (Amended Compl. ¶¶12-13; Hankins Aff. ¶7.) Killion contends that he discovered that the swim platform was actually cored and not made from solid fiberglass when he had repairs on the boat made at DiMillo's Old Port Marina and Yacht Sales (hereinafter "DiMillo's") in Maine. (Amended Compl. ¶13; Hankins Aff. ¶8.)


**B.    PROCEDURAL BACKGROUND**

On October 5, 2004, despite attempts made by Mainship to address the plaintiff's concerns and to gather information related to the plaintiff's claims, Killion filed suit in the Worcester Superior Court. On November 16, 2004, Mainship was served with a summons and the plaintiff's First Complaint and Jury Demand. On December 6, 2004, Mainship served its answer to the plaintiff's First Complaint and Jury Demand.


On December 13, 2004, Mainship filed its Notice of Filing Notice of Removal, and removed the case to this Court. On December 28, 3004, Killion filed an Amended Complaint and Jury Demand in the Worcester Superior Court.

- 4 -

Then on February 7, 2005, the plaintiff filed, without leave of Court, the same Amended Complaint and Jury Demand, but in this Court.

Mainship inquired of plaintiff's counsel about the status of the improper filing on March 2, 2005. Receiving no response to its inquiry, Mainship filed the Answer of Defendant Mainship Corporation to the Plaintiff's Amended Complaint and Jury Demand on March 8, 2005 (attached hereto as Exhibit "F").

Mainship contends that this case should be dismissed because this Court does not have personal jurisdiction over it. However, even if this Court were to exercise personal jurisdiction, the case should nevertheless be dismissed on the bases of improper venue and forum *non-conveniens*.

## II.    ARGUMENT

This action should be dismissed for lack of personal jurisdiction over the Defendant Mainship. See Fed. R. Civ. P. 12(b)(2). The plaintiff here fails to demonstrate that the Massachusetts long-arm statute would apply to the purchase and sale of the subject boat. In addition, the plaintiff has failed to demonstrate that this Court's exercising its jurisdiction over this case would not offend traditional notions of fair play and substantial justice.

Even if the Court were to find that it had personal jurisdiction over the parties, this Court should dismiss this case for improper venue or forum *non-conveniens*. If the Court were inclined to exercise jurisdiction over the parties, then, at the least, this action should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a), because such transfer would be for the convenience of the parties and witnesses and in the interest of justice, and because that is a district where this action might have been brought.

## A.     PROCEDURAL ISSUES

Preliminarily, Mainship wishes to eliminate, in advance, any potential argument that this motion is not timely, or not procedurally correct.  Mainship preserved the issues addressed here by way of Affirmative Defenses in its Answer of Defendant Mainship Corporation to the Plaintiff's Amended Complaint and Jury Demand (See Exhibit "F").

That Mainship did not file its motion before filing a responsive pleading is, at most, a "technical defect."  See Gerakaris v. Champagne, 913 F. Supp. 646, 650 (D. Mass. 1996).  The District of Massachusetts and other jurisdictions uniformly agree that a post-answer motion, although technically untimely, may be considered and granted.  See id.; Litchfield Financial Corp. v. Buyers Source Real Est. Group, Doc. No. 04-30076-MAP (Report and Recommendation, Dated April 13, 2005) (Neiman, M.J.) (opposition pending as to sections II(A)(1)(a), II(A)(2)(b) and II(A)(2)(c)) (attached hereto as Exhibit "G"); Ecotecture, Inc. v. Wenzi, 2000 WL 760961, at *1 (D. Me. 2000) (attached hereto as Exhibit "H"); Tobin v. Univ. of Me. System, 59 F. Supp. 2d 87, 89 (D. Me. 1999); Hall v. Kuzenka, 843 A.2d 474, 477-79 (R.I. 2004); Trustees of the Univ. of Pa. v. Mayflower Transit, Inc., 1997 WL 598001, at *1 (E.D. Pa. 1997) (attached hereto as Exhibit "I"); Quintanilla v. K-Bin, Inc., 993 F. Supp. 560, 562 (S.D. Tex. 1998).

## B.     LACK OF PERSONAL JURISDICTION

### 1.     Jurisdiction Under the Massachusetts Long-Arm Statute

In determining whether a nonresident defendant is subject to the exercise of personal jurisdiction, a federal court exercising diversity jurisdiction is equivalent to a state court sitting in the forum state.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 284 F. Supp. 2d 204, 212 (D. Mass. 2003).  "[T]he essential ingredients for exercising personal jurisdiction over

- 6 -

nonresidents" requires a two-fold inquiry. REMF Corp. v. Miranda, 60 Mass. App. Ct. 905, 905,

801 N.E. 2d. 296, 298 (2004). First, the court will "look . . . to see whether the plaintiffs have

satisfied their burden of establishing sufficient facts to support the assertion of personal jurisdiction

over the defendants under the long-arm statute, G.L. c. 223A, § 3." Id. at 905. "The second issue is

whether the out-of-State defendants had sufficient minimum contacts with Massachusetts that

subjecting them to personal jurisdiction would not offend 'traditional notions of fair play and

substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).


In this case, the plaintiff has failed to establish that this Court has jurisdiction under the

Massachusetts long-arm statute, and that Mainship had sufficient contacts with the Commonwealth

of Massachusetts. See REMF Corp., 60 Mass. App. Ct. at 907, 801; N.E. 2d at 300; Aub v.

Technicolor Entertainment Serv., 224 F. Supp. 2d 371, 373-74 (D. Mass. 2002).


Under the Massachusetts long-arm statute, the court is permitted to exercise jurisdiction

over an entity who engages in various conduct, if a cause of action arises from that conduct. Mass.

Gen. Laws. Ann. ch. 233A, § 3. Examples of such conduct are "transacting any business in this

Commonwealth" and "contracting to supply services or things in this Commonwealth." Id. The

courts in Massachusetts have long held, however, that "[t]he long-arm statute does not confer

personal jurisdiction where the nonresident's contacts with Massachusetts were 'purely incidental'

to the business transactions." Aub, 224 F. Supp. 2d at 373 (quoting Lyle Richards Int'l, Ltd. v.

Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997)). "Similarly, the Massachusetts Supreme Judicial

Court has distinguished cases in which a nonresident's contacts are 'random or isolated events'

from cases in which the contacts are 'part of a larger systematic effort on the nonresident's part to

obtain business from Massachusetts businesses and residents.'" Id. (quoting Tatro v. Manor Care, Inc., 416 Mass. 763 (1994)).[2]

Here, the plaintiff has not established that Mainship's contacts with Massachusetts are anything other than "random or isolated events," and this Court therefore lacks jurisdiction under the long-arm statute. Given the above factual background of the purchase and post-purchase claims of harm, at best it can be said that the connections with Massachusetts are the plaintiff's residence, and the allegations of purchasing the subject boat as a remote purchaser. This kind of isolated event does not trigger the Massachusetts long-arm statute, and for this reason alone jurisdiction is not proper.

### 2.    Due Process

Further, even if jurisdiction is found under the long-arm statute, the plaintiff has not established that Mainship has sufficient minimum contacts with the Commonwealth of Massachusetts so as to satisfy due process. To establish that the exercise of personal jurisdiction is proper under the due process clause of the Constitution, the plaintiff must show (1) that his "cause of action 'arises out of, or relates to' defendant's contacts with the forum state"; (2) that the defendant purposefully availed itself of the privileges of conducting activity in the forum state; and (3) that the cause of action is consistent with notions of fair play and substantial justice. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994).

Here, the plaintiff's complaint sets forth the factual situation in which most of the events took place in states other than Massachusetts. Moreover, the only arguable "nexus" the plaintiff had

---

[2]    The plaintiff has made a count entitled "Fraud." However, these claims directly relate to discussions the plaintiff allegedly had with the defendants in Maryland and Florida and may be analyzed using the same jurisdictional facts.

with <u>Mainship</u> before the alleged purchase occurred in Annapolis, Maryland, at a boat show. <u>See</u> <u>Ticketmaster-NY</u>, 26 F.3d at 206.

As for purposeful availment, other than possible conversations with this Massachusetts resident while he was in Maryland or Florida, there is nothing in the way of even the most remote proof that Mainship sought to take advantage of the privilege of conducting activities in Massachusetts. The only activity conducted before the purchase, sale and delivery of the boat was directed at producing a boat for sale in Virginia.

In addition, the plaintiff has failed to show that haling Mainship into court in Massachusetts would be consistent with fair play and substantial justice. Courts use the so-called gestalt factors[3] to determine whether the exercise of jurisdiction is fair. <u>See</u> <u>Donatelli v. Nat'l Hockey League</u>, 893 F.2d 459, 465 (1st Cir. 1990).

The gestalt factors do not favor exercise of jurisdiction here. The defendant, an out-of-state corporation, is burdened by being forced to appear in this jurisdiction. The District of Massachusetts has a negligible interest in adjudicating this somewhat ordinary alleged breach of contract and/or breach of warranty case. As he has shown repeatedly, even in his own pleadings,

---

[3]    These five factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiffs' interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting social policy.

<u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 150 (1st Cir. 1995) (quoting <u>United Elec., Radio & Mach. Workers of America v. 163 Pleasant Street Corp.</u>, 960 F.2d 1080, 1088 (1st Cir. 1992)). These criteria are called "gestalt factors" because in any given case, they may neither be amenable to mechanical application nor be capable of producing an open-and-shut result. Their primary function is simply to illuminate the equitable dimensions of a specific situation, thereby "put[ting] into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction" in that situation. <u>Id.</u> (internal citations omitted).

the plaintiff does not appear to be hampered by travel. He traveled to the boat show in Maryland; he purchased and took delivery of the subject boat in Virginia; and he sent the boat to Maine for repairs. The last two gestalt factors are, at best, "a wash." The judicial system in the District of Massachusetts would have a less than, or possibly, equal interest in obtaining the most effective relief compared with another jurisdiction, and this dispute could certainly be adjudicated in other venues, more convenient to the majority of the witnesses

Additionally, although the plaintiff claims that the subject boat was purchased in Massachusetts, courts disagree with this position. For example, in REMF Corp., the plaintiff also negotiated and signed a sales agreement from Massachusetts. 60 Mass. App. Ct. at 906. The plaintiff in REMF Corp. faxed the signed sales agreement back to the seller in Florida. Id. The Massachusetts Appeals Court still found that the Commonwealth of Massachusetts lacked personal jurisdiction. See also Intech, Inc. v. Triple "C" Marine Salvage, Inc., 441 Mass. 122, __ N.E.2d __ (Mass. 2005) (finding court lacked personal jurisdiction where buyer initiated contacts with seller of craft); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 153 (1978) (finding court lacked personal jurisdiction where plaintiff remotely purchased engines); Feingold v. Aromow Powerboats, 1990 WL 99113, at *2-3 (E.D. Pa. 1990) (denying motion to reconsider transfer where plaintiff had negotiated for purchase of boat over the phone) (attached hereto as Exhibit "J").

Similarly, facts here will likely show that the plaintiff negotiated the sale of the subject boat while in Massachusetts, but signed a purchase agreement which was faxed to the seller in Virginia. The boat was delivered in Virginia. See Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 291 (1st Cir. 1999) (stating that "courts repeatedly have held that the location where payments are due under a contract is meaningful datum for jurisdictional purposes"). Therefore, under the sound logic of the Massachusetts Appeals Court and the First Circuit, any federal court in

Massachusetts would lack personal jurisdiction over Mainship (and probably Commonwealth Yachts as well). Therefore, this case should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

### 3.    General Jurisdiction

Further, because the plaintiff has failed to establish specific jurisdiction under the Massachusetts long-arm statute and the Constitutional minimum contacts, he would also  not be able to establish general jurisdiction under its higher standard. See LTX Corp. v. Daewoo Corp., 979 F. Supp. 51, 57-58 (D. Mass. 1997). "Determining whether general jurisdiction exists involves two steps. The first is to determine whether the individual defendants have minimum contacts with the forum state." Id. at 57. The next step, if the above minimum contacts are found, is to determine, generally using the gestalt factors. Id.

As argued above with the less stringent long-arm statute contacts, it is likewise clear that the plaintiff has not established that Mainship has had contacts sufficient to meet the test for general jurisdiction. At most, the court could find that the plaintiff was a remote purchaser from the Commonwealth of Massachusetts. Lacking the minimum contacts necessary to establish general jurisdiction, it is unnecessary to examine the gestalt factors. Nevertheless, even if this Court were inclined to do so, as noted above the examination of the gestalt factors does not favor exercise of jurisdiction.

Therefore, the plaintiff has not established that this Court should exercise its jurisdiction over Mainship in this case.

**C.    IMPROPER VENUE**

1.    **Improper Forum and Forum *Non-Conveniens***

Even if this Court were to find that it had personal jurisdiction over Mainship, venue is improper in the District of Massachusetts.  Under 28 U.S.C. § 1391(a), venue is proper in:

(1)    a judicial district where any defendant resides, if all defendants reside in the same State,

(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3)    a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Here, none of these three provisions apply.

With respect to provision (1), all of the defendants do not reside in the same State.  Mainship is a resident of New Jersey, and Commonwealth Yachts is a resident of Virginia.  As to provision (2), no substantial events occurred within the Commonwealth of Massachusetts.  As discussed above, all of the counts in the plaintiff's complaint arise from a series of events which took place in Maryland, Virginia, or Maine – and perhaps additional locations, but not in the Commonwealth of Massachusetts.

Finally, in keeping with provision (3), and as discussed below, the consideration of whether there exists another jurisdiction in which this action could have been brought, makes this provision

- 12 -

inapplicable. The convenience of the witnesses and the interests of justice weigh in favor of transfer

to the Eastern District of Virginia.


**2.      Convenience of the Witnesses.**

As an alternative to dismissal, the court may transfer this case to another venue.  Section

1404(a) of Title 28 of the United States Code provides:

> For the convenience of parties and witnesses, in the interest of
> justice, a district court may transfer any civil action to any other
> district or division where it might have been brought.


Given (a) that the locus of the events in this case were in two distinct areas, (b) that one of

the defendants "resides" in Gloucester Point, Virginia,  and (c) the sale and delivery of the subject

boat took place in the Eastern District of Virginia, there should be no question that this action could

have been brought there.  See 28 U.S.C. §1391.  Moreover, the original sale of the vessel, subject to

the terms of the Mainship Limited Warranty, took place in Virginia.


In sharp contrast, this action has almost no factual nexus with Massachusetts.  There are

likely to be two categories of important witnesses located in two distinct areas.  The first category

will be those witnesses likely to be knowledgeable about the plaintiff's research of, and the purchase

and sale of, the subject boat.   These witnesses include Mr. Harry Barritt, President of

Commonwealth Yachts, and representatives of Mainship.  These witnesses would be located in

Virginia, Maryland, in Georgia or Florida.


The second category of witnesses will be those likely to be knowledgeable about the

attempts to rectify and to satisfy the alleged claims of the consumer.  These witnesses include the

plaintiff, representatives of DiMillo's, and representatives of Mainship. Those individuals are likely to be in Maine or Georgia. The only party known to reside in Massachusetts is the plaintiff.

Consideration of the convenience of the party and non-party witnesses indicates that this action should be transferred. "The convenience of the witnesses is '[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. §1404(a).'" Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 3 (D. Mass. 1987) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure 2d §3851 at 415 (1986)). "In most cases, the convenience of the party and non-party witnesses is the most important factor in the decision whether to grant a motion to transfer." Arrow Elecs., Inc. v. Ducommun, Inc., 724 F. Supp. 264, 265 (S.D.N.Y. 1989). This case will involve, in the first instance, any rights of the plaintiff under warranty law. If the warranty claims are not precluded as a matter of law, then the case will turn on issues such as how the subject boat was designed, used, and/or repaired, and expert analysis of same. The issues at such a trial would be a classic battle of experts who will be analyzing the same basic documentary data.

Additionally, this case would involve a factual dispute over alleged representations made by representatives of Mainship and Commonwealth Yachts during the plaintiff's research, negotiations and purchase and sale of the subject boats. These events took place in Maryland, and continued over the telephone between representatives of Commonwealth Yachts in Virginia on the one hand, and the plaintiff in Massachusetts on the other. Other than the plaintiff, the witnesses to these communications would be in Virginia and Georgia, and possibly Florida.[4]

---

[4]    The plaintiff has mentioned that he visited the Mainship factory in Florida around the time of the purchase of the subject boat. That fact is not mentioned in the Amended Complaint and Jury Demand, and it is not important to ruling on this motion.

Mainship believes that there are about six to eight party and non-party witnesses who are likely to testify concerning any warranty or design and repair issues. These witnesses – representatives of Mainship and representatives of Commonwealth Yachts – reside and work in Georgia, Florida or Virginia.  As to the background or foundational witnesses, if any or all of their testimony proves necessary, the majority of them also reside or were last known to reside in Georgia, Florida or Virginia.  These would likely be employees of Mainship, which manufactured the boat, and employees of Commonwealth Yachts, which sold the boat.  Thus, Virginia, being closer to Georgia and Florida than Massachusetts, is clearly a more convenient venue for all but one or two of the known witnesses.

Among the claims in dispute is the purported conduct which gave rise to Mr. Killion's fraud count, apparently took place mostly at the boat show in Annapolis, Maryland.  Although discovery has not yet begun in this case, any witnesses to these events aside from the party witnesses are likely to be in the Virginia area.

The convenience of the witnesses should be given greater weight than the locus of plaintiff's choice of forum.  Atari v. United Parcel Serv., Inc., 211 F. Supp. 2d 360, 364 (D. Mass. 2002).  In Atari, this Court (Keeton, J.) transferred the case to the U.S. District Court in New Jersey, inter alia, because the majority of the relevant witnesses were located there.  This Court should follow the logic of the Atari case and transfer to the U.S. District Court, Eastern District of Virginia.

### 3.    Virginia Is the more Convenient Forum for this Case.

Virginia is clearly more convenient for the defendant Commonwealth Yachts, because that is where it is located.  Relevant documents are also located there, and all of its identifiable party witnesses are located there.

Furthermore, "[w]here [as here] the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight." Brant Point Corp., 671 F. Supp. at 5, (citing Goodman v. Schmalz, 80 F.R.D. 296, 302 (E.D.N.Y. 1978)); see also, e.g., Gray v. Continental Marketing Assoc., Inc., 315 F. Supp. 826, 832 (N.D. Ga. 1970); 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d §2112 (1994) (the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business).

As in Atari, the majority, if not all, of the relevant events occurred outside of Massachusetts. The sale of the subject boat arguably took place in Virginia.[5]  The subject boat was built at the Mainship factory in St. Augustine, Florida.  Any alleged misrepresentations involving Mainship employees took place at the boat show in Annapolis.[6] Therefore, if there is a convenient forum, it is certainly not Massachusetts (except for the plaintiff), and is in Virginia.

### 4.    The Interests of Justice Favor Transfer to Virginia

The interests of justice would be served by the transfer of the case to Virginia, where the forum court may be more familiar with the law which is likely to apply.  In this case, Massachusetts choice of law rules, applied to the facts of this case, seem to indicate that the substantive law of Virginia would govern plaintiff's substantive warranty rights and remedies.  Travenol Laboratories,

---

[5]    The plaintiff has made arguments that the sale of the boat took place in Massachusetts.  This proposition is suspect, but has not yet been ruled upon by this Court.  See REMF Corp. v. Miranda, 60 Mass. App. Ct. 905, 801 N.E., 2d 296 (2004).

[6]    Additionally, any claim for breach of warranty under Massachusetts law, if it were to apply, or Virginia law, would accrue when and where a product were delivered, regardless of whether the plaintiff knew of the breach.  See, e.g., Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 291 (1st Cir. 1999); Wolverine Ins. Co. v. Tower Iron Works, Inc., 370 F.2d 700, 702 (D.Mass. 1966) (applying Ohio law); Stanfield v. DeStefano, 300 So.2d 712, 713 (Fla. App. 1974) ("There is no question concerning the general rule that a cause of action is deemed to have 'accrued' for venue purposes where the act of default occurs.") (internal quotation omitted); Mass. Gen. Laws. ch. 106 §2-725 (1999).

Inc. v. Zotal, Ltd., 394 Mass. 95, 98.[7]  That factor "favors a transfer[] since it is judicially desirable to have cases decided by a Court familiar with the substantive law to be applied. . . ."  Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 991 (E.D.N.Y. 1991).


This is not a case in which the Court would simply be transferring the inconvenience of producing witnesses and evidence from one party to another.  Cf., e.g., Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001).  Here, the witnesses and evidence on both sides would be in Virginia, or equidistant.


Thus, should this Court choose not to dismiss the case, many factors favor transfer to Virginia.  Virginia has a relationship to the facts giving rise to this action.  The subject boat was built nearby, sold in Virginia, and delivered in Virginia.  Virginia is where significant witnesses reside, and would be more convenient to the majority of remaining witnesses living outside.  Documents relating to the design and manufacture are located there.  The convenience to all parties would be great because Virginia is equidistant between the plaintiff and any possible witnesses from Maine, and the defendants in Virginia, Southern Georgia and Florida.  Finally, it is judicially desirable for the Eastern District of Virginia to decide this case because of its familiarity with Virginia substantive law.[8]

---

[7]     Massachusetts choice of law rules would continue to apply if the case were transferred there.  Ferens v. John Deere Co., 494 U.S. 516, 525-26 (1990); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243 n.8 (1981).

[8]     If this Court rules that it lacks personal jurisdiction over Commonwealth Yachts, it makes a transfer of venue all the more reasonable.  The plaintiff, if he so wishes, can file suit against Commonwealth Yachts, and his claims of fraud and breach of contract, inter alia, can be disposed of in a convenient trial package.

### 5.    Forum *Non-Conveniens*

Alternatively, the Court also has grounds for dismissal under the principle of forum *non-conveniens*. A dismissal based upon grounds of forum *non-conveniens* is largely a matter of judicial discretion, but that discretion is to be exercised by balancing the facts of a particular case. <u>W.R. Grace & Co. v. Hartford Accident & Indemnity Co.</u>, 407 Mass. 572, 577, 555 N.E.2d 214 (1990); <u>Joly v. Albert Larocque Lumber Ltd.</u>, 397 Mass. 43, 44, 489 N.E.2d 698 (1986).  There are two categories of concern: private and public interest factors. <u>Minnis v. Peebles</u>, 24 Mass. App. Ct. 467, 469, 510 N.E.2d 289 (1987).  Private interest factors include, for example, relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses. <u>See</u> <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947) (quoted in <u>New Amsterdam Casualty Co v. Estes</u>, 353 Mass. 90, 95, 228 N.E.2d 440 (1967)).  Public interest factors include, for example, administrative difficulties flowing from court congestion, local interest in having localized controversies decided at home, and the avoidance of unnecessary problems in conflict of laws. <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 233, 241, n.6 (1982).

Here both the private interest factors and the public interest factors weigh in favor of dismissal.  Much of the evidence will be found closer to Virginia than Massachusetts.  Once again, witnesses will be located in Georgia, Florida and Virginia, and the costs associated with procuring those witnesses is likely to be reduced by holding a trial in Virginia rather than Massachusetts. Lastly, the public interest factors weigh in favor of dismissing this case.  Massachusetts courts, as elsewhere in the country, are crowded, and Massachusetts does not have a higher interest in resolving this dispute than Virginia or another jurisdiction.  Therefore, this case should be dismissed on the basis of forum *non-conveniens*.

- 18 -

## III.    CONCLUSION

Wherefore, the defendant Mainship Corporation prays that its Motion to Dismiss be allowed.  In the alternative, Mainship Corporation prays that its Motion to Dismiss for forum *non-conveniens* be allowed.  Proposed Orders are attached as Exhibits "A," "B" and "C".

The defendant,
Mainship Corporation,
By its attorneys,


Peter M. Durney #139260
Anthony J. Manhart #657610
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
(617) 482-8100


## CERTIFICATE OF SERVICE

I, Anthony J. Manhart, attorney for the defendant, Mainship Corporation, hereby certify that on the 25 day of May, 2005, a true copy of the foregoing Defendant Mainship Corporation's Memorandum in Support of Its Motion to Dismiss, was served by 1st class mail, postage prepaid, directed to:

John M. Wozniak, Esq.
Brandon S. Killion, Esq.
Wozniak & Padula, P.C.
82 Cape Road, Suite 140
Mendon, MA  01756

Robert S. White, Esq.
Bourgeois Dresser & White
4 Dix Street
Worcester, MA  01609


Anthony J. Manhart

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the
way in which it was bound.

The original is available for viewing in the Clerk's Office.