UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| Robert J. Killion, Jr. ) <br> Plaintiff, ) <br> v. ) <br> ) <br> Mainship Corporation and ) <br> Commonwealth Yachts ) <br> Defendants. ) | Civil Action No. 04-40256-FDS |

**PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO THE DEFENDANT, MAINSHIP CORPORATIONS MOTION TO DISMISS**

The plaintiff, Robert J. Killion, Jr (the "Plaintiff"), hereby submits this Memorandum of Law in Support of his Opposition to the Defendant, Mainship Corporations ("Mainship") Motion to Dismiss.

I.   STATEMENT OF THE CASE

This action arises from the alleged defective condition of a marine vessel manufactured by Mainship and sold to the Plaintiff by the Co-Defendant, Commonwealth Yachts.

As is asserted and plead by the Plaintiff, the basis of his claims is not, as seemingly suggested by Mainship, based solely upon the acts of Commonwealth Yachts.

There exist facts as asserted by the Plaintiff, which support both the assertion of jurisdiction and proper venue in this Court. Those facts are as follows:

1.   The contract for the purchase of the vessel was precipitated by marketing efforts in Massachusetts by both Defendants. See Affidavit of Robert J.

Killion Jr. dated February 3, 2005, ¶ 2 and 5; Affidavit of Robert J. Killion Jr. dated June 15, 2005, ¶ 2-4.

2. The materials relied upon by the Plaintiff in purchasing the vessel were created and placed into the stream of commerce by Mainship. See Killion Aff dated June 15, 2005; Amended Complaint, ¶8-9.

3. At the time of the Plaintiffs purchase, Mainship had an authorized dealership in Massachusetts and presently has DiMillos as its exclusive dealership for Massachusetts. See Killion Aff, ¶3-6.

4. Commonwealth Yachts was acting in concert with and in the capacity as Mainships agent in regard to representations made at the Annapolis Boat Show. See Amended Complaint ¶6-10.

## II. ARGUMENT:

### A. THE PLAINTIFF HAS MET HIS BURDEN FOR APPLICATION OF THE MASSACHUSETTS LONG ARM STATUTE

The facts as plead by the Plaintiff aptly demonstrate that jurisdiction over Mainship exists warranting the denial of its motion to dismiss.

"In determining whether a non-resident defendant is subject to its jurisdiction, a Federal Court exercising diversity jurisdiction "is the functional equivalent of a State Court sitting in the forum state" Ticket Master-New York, Inc. v. Alioto, 26 F. 3d 201-203(1st Cir. 1994). "The Court must, therefore, find sufficient contacts between the Defendant and the forum to satisfy both the States long-arm statute and the Fourteenth Amendments Due Process clause." Sawtelle v. Farrell, 70 F. 3rd, 1382, 1385-86 (1st Cir. 1995). "A District Court may exercise authority over a defendant by virtue of either general or specific personal jurisdiction." Massachusetts School of Law at Andover, Inc.

v. American Bar Association, 142 F. 3rd 26, 34 (1st Cir. 1998). (Emphasis added). "General jurisdiction exists when the Defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit." United Electric, Radio and Machine Workers v. 163 Pleasant Street Corp., 960 F. 2nd 1080, 1088 (1st Cir. 1992).

In this case, the dealership of Mainship was operating within the borders of the Commonwealth of Massachusetts for the purposes of general jurisdiction. Specifically, Mainship placed its product into the stream of commerce in the state with the use of agents. Those agents, in the state, as was the case at the time the Plaintiff purchased this marine vessel, or presently as is in the case of DiMillos Marine and Yacht Sales located in Maine which holds the exclusive territory of Commonwealth of Massachusetts, evidences the requisite basis for general jurisdiction.

Even assuming, arguendo, the conduct of Mainship fails to meet this criteria, the application of the facts in this case support jurisdiction. As a fundamental matter, the Supreme Judicial Court of the Commonwealth of Massachusetts has interpreted the states Long-Arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Tatro v. Manor Care, Inc., 4 16 Mass 763 (1994). Consequently, the application of the Massachusetts Long-Arm statute is one of constitutional analysis.

"The due process clause protects an individuals liberty interest and not being subject to the binding judgments of a forum with which he had established no meaningful "contacts, ties or relations." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)(Citations Omitted). "Due process requires that only that in order to subject a

defendant to a judgment in personum, if he not be present within the territory of a forum, he have certain minimum contacts with it such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)(quoting Milliken v. Myer, 311 U.S. 457, 463(1940)). In evaluating a contract case, such analysis evaluates the parties "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing" to determine whether the defendant purposely established minimum contacts. See Burger King, 471 U.S. 479. The "determination of whether exercising personal jurisdiction is proper is sensitive and specific to the facts in each case and every case must turn on its own facts." Droukas v. Divers Training Academy, 375 Mass. 149 (1978).

In the application of the facts as asserted by the Plaintiff in this case in a light most favorable to the Plaintiff, there can be no doubt that the requisite minimum contacts exist. In this case, Mainship actively marketed and sought out the Plaintiff for the single-minded purpose of selling a marine vessel. Specifically, Mainship forwarded by facsimile marketing material to the Plaintiff with the implicit intention of him purchasing Mainships product. Moreover, Mainship although it accurately states as of the time of the Affidavit submitted it had no authorized dealerships in the Commonwealth of Massachusetts, at the time the Plaintiff entered into the contract for the purchase of the marine vessel at issue, they did in fact have such an authorized dealership. Furthermore, although not physically located within the Commonwealth of Massachusetts, there presently exists a dealership just outside the borders of this Commonwealth, which now purports to be an exclusive dealership and territorial rights for the sale of Mainships

product in the Commonwealth of Massachusetts. Simply stated, the facts not only aptly demonstrate a minimum contact but an entity, which actively sought and continues to seek consumers of its products in the Commonwealth of Massachusetts.

As stated by the Court in <u>Sawtelle v. Farrell</u>, the evaluation as to whether jurisdiction exists the 1st Circuit utilizes a three-part analysis to determine if sufficient contacts exist to exercise specific personal jurisdiction. The parts of that analysis are as follows:

1. The claim underlying the litigation must directly arise out of or relate to, the Defendants firm state activities.

2. The Defendants in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby evoking the benefits and protections of that states laws and making the Defendants involuntary presence before the State Courts foreseeable.

3. The exercise of jurisdiction must, in light of the "gestalt factors":
   a. Relatedness.

The Courts have recognized that "although this requirement is the least developed prong of the due process inquiry, it serves the important function of focusing the Courts attention on the nexus between a Plaintiffs claim and a Defendants contacts with the forum. <u>See Sawtelle</u> at 70 F. 3 at 1391(Citations Omitted). "Relatively speaking, the relatedness test is a "flexible, relaxed standard, "as suggested by the disjunctive nature of the requirement." Id. (Citations Omitted).

As previously indicated, the conduct of Mainship in conjunction with this business enterprise is both actively seeking out the Plaintiff for the purposes of selling its

product and its presence through its agents in the form of dealerships in the Commonwealth of Massachusetts address this element.

b.      Purposeful Availment

The second element requires that "the defendants in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby evoking the benefits and protections of that states laws in making the Defendants involuntary presence before the State Courts foreseeable." Oster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F. 3rd, 138, 142(1st Cir. 1995). "The function of the personal availment requirement is to assure that personal jurisdiction is not premised solely upon a Defendants "random, isolated, or fortuitous" contacts with the forum state." Sawtelle, 70 F. 3rd at 1387 (Citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). "Our focus is on whether a Defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable."" Id. (Citing Rush v. Savchuk, 444 U.S. 320, 329(1980).

The facts as reviewed in the light most favorable to the Plaintiff unequivocally demonstrate that this was not a single or remote incident but a purposeful distribution and availment of Mainships product within the Commonwealth of Massachusetts. In this case, not only was the availability of the product but remote, but also Mainship itself contacted Plaintiff directly by facsimile in an effort to market and solicit his business. Both the facts as plead by the Plaintiff in his Amended Complaint, together with those contained in the Affidavits submitted easily carry the burden with respect to this element.

c.  The Gestalt factors

The Supreme Court has identified five considerations to be utilized as the Court analysis, concepts of reasonableness and fairness objecting not residents to the authority of a foreign tribunal which the 1st Circuit Court of Appeals has turned the "gestalt factors". Those factors are as follows:

1. The Defendants burden of appearing;
2. The forum states interest in adjudicating the dispute;
3. The Plaintiffs interest in obtaining convenient and effective relief;
4. The judicial systems interest in obtaining the most effective resolution of the controversy; and
5. The common interest of all sovereigns in promoting substantive social policies.

   i. The defendants burden of appearance

   The facts of this case lack any indication that Mainship would somehow incur "special or unusual burden" in defending the case in this Court. The mere inconvenience of a party in defending a case in a foreign jurisdiction without something more falls short.

   ii. The forum states ajudicary interest

   "The purpose of this inquiry is not to compare the forum interests to that some other jurisdiction, but to determine the extent to which the forum has an interest." Id. (Citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F. 3rd 138, 151 (1st Cir. 1995). There can be no doubt that the Commonwealth of Massachusetts

holds an interest ensuring that its citizens when purchasing a product that is actively marketed within the boundaries has a remedy within this boundaries also available.

iii. Plaintiffs Interest in Obtaining Convenient Relief

The Courts have recognized that "Plaintiffs choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Id. (Citations omitted). Obviously, it is more convenient for the Plaintiff to litigate in the Commonwealth of Massachusetts where he resides rather than elsewhere.

iv. The Administration of Justice

As to the facts of this case, no single issue throws off the balance, cuts in either direction.

v. Pertinent Policy Arguments

The final "gestalt" factor requires the Court to consider the common interest of all sovereigns in promoting substantive social policies. In this case, the Commonwealth of Massachusetts has an interest in its citizens being provided a convenient forum for the adjudication of any and all claims they may hold against corporate entities from other jurisdictions.

In sum, the facts that exist in the light most favorable to the Plaintiff, demonstrate clearly and unequivocally that personal jurisdiction pursuant to Massachusetts's long-arm statute is proper. Consequently, the Defendant, Mainships motion, should be denied.

## II. THE VENUE IN THE DISTRICT OF MASSACHUSETTS IS PROPER

Pursuant to 28 U.S.C. §1391(a), venue is proper when a judicial district which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is subject of the action is situated, or a judicial district in which any Defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The Plaintiffs assertions and allegations demonstrate that significant portions of the communications that took place given rise to these claims took place in the Commonwealth of Massachusetts. Although Mainship contends that this is not the case, it is that same argument which failed in previous discussions concerning jurisdiction.

As alleged, the Plaintiff was contacted in the Commonwealth of Massachusetts. The Plaintiff in conjunction with those communications traveled to a boat show located in Maryland. Subsequent to that time, the Defendants began a series of discussions and negotiations with the Plaintiff for the purposes of inducing him to purchase the marine vessel at issue. In essence, while the Defendant, Mainship points to the number of witnesses necessary in the State of Virginia, it neglects to take into account the witnesses in the Plaintiffs case, including the Plaintiff himself and other family members, together with the individuals who worked on the marine vessel at issue who were employed by DiMillo located in Maine.

Clearly, these witnesses are no less important than those of the Defendant. Consequently, the facts and equities together with the relative conveniences of the witnesses involved in this action weigh in favor of the Plaintiff.

III.  CONCLUSION

For the foregoing reasons, the Plaintiff demands that the Defendant, Mainship Corporation's Motion to Dismiss be denied.

                                        Respectfully Submitted,
                                        The Plaintiff,
                                        By His Attorney,

                                        John M. Wozniak, BBO#556441
                                        Wozniak & Padula, P.C.
                                        82 Cape Road
                                        Mendon, MA 01756
                                        (508) 478-3788

Dated: June 15, 2005